**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| STEVE A. HAMM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 12-CV-2427 |
| | ) | |
| NESTLE USA, INC., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On April 2, 2012, Plaintiff Steve Hamm filed a one-count complaint [1] against Defendant Nestlé USA, Inc., alleging a violation of the Family and Medical Leave Act (29 U.S.C. § 2601 *et seq.*) (the "FMLA" or "Act"). Before the Court are cross motions for summary judgment filed by Plaintiff [23] and Defendant [20]. For the reasons set forth below, the Court grants Defendant's motion for summary judgment [20] and denies Plaintiff's cross motion for summary judgment [23].

## I. Background

### A. Statements of Material Fact

Local Rule 56.1 requires that statements of fact contain allegations of material fact and that the factual allegations be supported by admissible record evidence. See L.R. 56.1; *Malec v. Sanford*, 191 F.R.D. at 583-85 (N.D. Ill. 2000). Adherence to Local Rule 56.1 gives the opposing party the opportunity to either admit or deny the statement of fact, and to provide record support for either assertion. By not following the rule, a party injects facts into the case that have not been subject to the opposing side's scrutiny, nor presented to the court for its review. The Seventh Circuit repeatedly has held that a district court is within its discretion to

strictly enforce compliance with its local rules regarding summary judgment motions and the Court will do so here. See *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 359 (7th Cir. 2009); *Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000).

In this matter, Defendant filed a Local Rule 56.1(a) Statement of Material Facts. Many of Plaintiff's denials were made without citation to specific evidentiary materials justifying the denial—in other words, Plaintiff will "dispute" a statement of fact, but fails to cite to any evidence to refute the fact or without attaching any documents to support the denial. For instance, in Defendant's Fact Statement 18, Defendant states: "Monas felt that the manner in which Plaintiff requested time off was suspicious, and in an e-mail that morning to Coen and Schultz, he reported his recollection of the incident." Defendant supports its assertion with several accurate citations to the record. In response, Plaintiff disputes the statement and simply says that Monas lied to Coen and Schultz as to what happened. Plaintiff does not cite any evidence in support of his assertion that Monas lied and instead refers the Court to his own fact statements. Such denials are improper and insufficient to rebut a movant's factual allegations. See *Madonia v. BP Prods. N. Am.*, 2012 WL 13519, at *1 (N.D. Ill. Jan. 4, 2012) ("Such "objections," as Plaintiff styles them, with no evidentiary support are not sufficient to defeat summary judgment; rather, a nonmovant must support each denial with specific citations to the record or to supporting materials or affidavits that support their denial."); see also *McGuire v. UPS*, 152 F.3d 673, 675 (7th Cir. 1998) ("An answer that does not deny the allegations in the numbered paragraphs with citations to supporting evidence in the record constitutes an admission.") (internal citations omitted). Although the Court also has considered Plaintiff's fact statements, Plaintiff should have provided citations to the record in disputing Defendant's fact statements.

Moreover, in his own statements of fact, Plaintiff repeatedly cites to an entire deposition but fails to cite to a specific part of the deposition, instead relying on the Court to read the entire deposition and locate the portion that supports his fact statement. It is not the role of the Court to parse the parties' exhibits to construct the facts. Judges are not "like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991). "Nor are they archaeologists searching for treasure." *Jeralds ex rel. Jeralds v. Astrue*, 2010 WL 4942161, at *7 (N.D. Ill. Dec. 8, 2010) (citing *DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999)). It simply is not the court's job to sift through the record to find evidence to support a party's claim. *Davis v. Carter*, 452 F.3d 686, 692 (7th Cir. 2006). Rather, it is "[a]n advocate's job * * * to make it easy for the court to rule in his client's favor * * *." *Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 613 (7th Cir. 2006).

Additionally, Plaintiff's sole response to several of Defendant's fact statements is "IMMATERIAL." For instance, in Defendant's Fact Statement 5, Defendant states: "Prior to his termination, Nestlé had warned Plaintiff on at least nine occasions and suspended him once because of his attendance infractions." Although Plaintiff's attendance history obviously is material to the issues before the Court on summary judgment, Plaintiff's response is simply "IMMATERIAL." To the extent that the Court deems those statements responded to by Plaintiff as "IMMATERIAL" to in fact be "material," those statements will be deemed admitted.

**B. Facts**

Defendant Nestlé is a food and beverage company with facilities throughout the United States, including a logistics and distribution center in DeKalb, Illinois. Plaintiff Steve Hamm worked at the DeKalb facility from June 2008 until December 16, 2010, in a warehouse position on a shift commencing at 5:00 a.m. and ending at 3:00 p.m. During the relevant time period,

Human Resources Manager Kevin Coen oversaw employment matters in DeKalb and several other facilities in the US and Human Resources Specialist Paula Schultz was responsible for administering FMLA leaves. Because Coen could only be present at one facility at a time, when employment-related issues arose at a facility where he was not present, he would direct local management to gather additional information. He would then review the information provided before making a decision on the course of action that Nestlé should take. Abuse of intermittent FMLA leave by employees had been a recurrent concern among the DeKalb Nestlé human resources personnel. Prior to December 2010, Coen had participated in three separate situations where Nestlé received reports that employees were misusing FMLA to take time off for non-FMLA reasons.

Prior to his termination, Nestlé had warned Plaintiff on nine separate occasions and suspended him once because of his attendance infractions. Additionally, in October 2009, a supervisor reported concerns that Plaintiff had been dishonest when asked about a violation of safety protocol. In connection with this incident, Human Resources Manager Kevin Coen decided against termination and instead issued Plaintiff a final written warning.[1]

In May 2010, Nestlé approved Plaintiff's request for intermittent FMLA leave for the purpose of providing care to his father, including personal care, driving, and doctor's

[1] Plaintiff does not contest his attendance problems; rather, as previously indicated, he maintains that they are "immaterial." Contrary to Plaintiff's assertion, Plaintiff's prior history of attendance issues is relevant to the Court's analysis of whether Coen held an "honest suspicion" that Plaintiff was misusing leave time. In making his decision to terminate Plaintiff, Coen has a body of information before him—past attendance infractions plus information from the investigation into the incident on December 1 and 2, 2010. As set forth in more detail below, in determining whether an employer has interfered with or retaliated or discriminated against an employee taking FMLA leave time, the Court looks at all of information before the decision-maker to determine whether the decision-maker had a legitimate basis to form an honest belief that an employee used the FMLA for non-FMLA purposes. See *Scruggs v. Carrier Corp.*, 688 F.3d 821, 826 (7th Cir. 2012) (affirming summary judgment for employer where employer suspected employee was "misusing his FMLA based upon his prior absenteeism."). To suggest that Plaintiff's prior record of absenteeism is immaterial to his FMLA claim misapprehends the inquiry at summary judgment.

appointments.[2] Plaintiff and his father authorized Nestlé to contact the father's doctor and obtain information relating to Plaintiff's FMLA use. Plaintiff understood his leave was limited to caring to his father and that if he used it for any other reason, he would be misusing FMLA. Nestlé's policy requires that employees use their floating holidays and all but five days (or 40 hours) of available "paid time off" ("PTO") while absent on FMLA. This requirement was set out in Nestlé's Notice of Eligibility given to Hamm on or about September 15, 2010.

On multiple occasions in the latter half of 2010, Plaintiff requested and received time off under the FMLA. On the morning of December 1, 2010, Plaintiff asked his supervisor, Rick Monas, if he could take the following day off of work. According to Plaintiff, his father had texted Plaintiff that morning and stated that he needed to go to the doctor. Monas felt that the manner in which Plaintiff requested time off was suspicious, and in an e-mail that morning to Coen and Schultz, he reported his recollection of the incident. According to the events reported by Monas, Plaintiff first asked to take a "floating holiday," a request Monas denied due to staffing considerations. Plaintiff then told Monas that he needed "to take [his] dad to the doctor, and [he] needed FMLA and [Monas] said that was fine." Pl.'s Dep. at 43:8-11. Plaintiff maintains that he mentioned his father's doctor's appointment when he asked for the "floating holiday."

Due to the nature of Plaintiff's request, Monas asked Schultz to investigate further to determine whether Plaintiff's father had a doctor's appointment the next day. After speaking to Monas, Schultz contacted the doctor's office and learned that Plaintiff's father did not have an appointment scheduled for December 2, 2010. Schultz shared what she had learned via e-mail with Monas, and Monas suspended Plaintiff pending further investigation, telling Plaintiff that

[2] On September 23, 2010, Nestlé re-approved Plaintiff's request for intermittent FMLA leave to care for his father.

Nestlé had learned that his father had no appointment the following day, that it suspected him of FMLA misuse, and that it would investigate the situation. After Monas suspended Plaintiff, the doctor's office called Schultz later that afternoon to report that a December 2 appointment for Plaintiff's father had just been made. Schultz reported the call to Coen via e-mail. In his deposition, Plaintiff admitted that the appointment was not made until after Monas informed him that Nestlé suspected him of misusing FMLA. On December 2, 2010, Monas completed a "Termination/Suspension Report" to record the decision to suspend Plaintiff and recounted his recollection of the events from the previous day.

After reviewing the December 1 e-mail reports from Monas and Schultz, Coen determined that the circumstances looked suspicious and thought Plaintiff had potentially fabricated his father's doctor's appointment after Monas denied his floating holiday request. Coen does not recall having any reason to believe prior to December 2010 that Plaintiff was abusing FMLA. Coen spoke with Monas and another supervisor, Rob Mifflin, about the situation. Monas confirmed the information contained in his e-mails. Coen then directed Monas to speak to employees whom Monas thought might have knowledge of potential FMLA misuse and ask them to provide written statements. Coen planned to evaluate the situation upon his return from his preexisting business travel plans in California during the week of December 6, 2010.

Over the next few days, Monas spoke with Jeff Dubin, Ryan Messer, Eric King, and Mike Brown—all individuals whom Monas understood talked with Plaintiff at work—and asked them to report in writing what they knew, if anything, about Plaintiff taking time off for personal reasons. Dubin reported in his written statement, and reiterated at his deposition, that in July 2010, Plaintiff told Dubin and others that he was using FMLA to leave work early and go golfing

with other co-workers. Messer, whom Plaintiff considered a friend, reported in his written statement that he, King and Plaintiff had made plans to leave work early to play golf on a day Plaintiff recorded an FMLA absence. Plaintiff did not show up for golf that day. Messer also reported that "[t]here have been other instances, however, that I have heard him wanting to use FMLA for events and personal time since he hadn't had any PTO * * * left." Messer reported another situation when he had shared with Plaintiff that he would be leaving work early to have breakfast and then attend a wake. According to both Messer's statement and his deposition testimony, Plaintiff also wanted to leave early but had no accrued time off, so he told Messer, "Screw it, I'll use FMLA and hit breakfast with you." Plaintiff disputes that he ever told Messer that he would "hit breakfast" with him. Mike Brown and Erik King, Plaintiff's girlfriend's brother, did not report any FMLA abuse by Plaintiff in their written statements. The contents of the written reports from Brown, King, Messer, and Dubin were supplied to Nestlé.

While Monas was interviewing Plaintiff's co-workers, Human Resources Specialist Schultz contacted Plaintiff's father's doctor's office to ask if the father's appointment history corresponded with any days that Plaintiff had used FMLA time during the past six months. During a December 7 phone call, the doctor told Schultz she was no longer authorized to provide the information pursuant to HIPPA regulations, even though Plaintiff's father had authorized disclosure of such information and the office had previously provided the information to Schultz when Schultz contacted her on December 2. On December 8, 2010, Schultz received a voicemail from the doctor's office stating that they had been instructed not to provide any information to Nestlé. Schultz reported these developments to Coen.

On December 9, 2010, Monas and Mifflin met with Plaintiff to interview him about Nestlé's suspicions and the information gathered since December 1, 2010. After asking Plaintiff

to provide a written statement regarding the December 1 incident, and after he supplied a doctor's note showing that his father had attended the appointment made after Plaintiff was notified of Nestlé's suspicions, Monas and Mifflin notified Plaintiff that Nestlé had received reports of past FMLA use from his co-workers and inquired into those incidents. In his written statement, Plaintiff reported that he believed that Monas had a personal vendetta against him. Following the interview, Monas sent to Coen an e-mail summary of his recollection of the interview, reporting that Plaintiff had conceded several key points seeming to corroborate information provided by his co-workers, including the point, as reported by Monas, that Plaintiff travelled back from a country music festival on a day he had prearranged to take FMLA leave. During his deposition, Plaintiff refuted Monas' report and testified that he had returned on Sunday, not on Monday (the day that he had prearranged to take FMLA leave).

Upon returning to DeKalb, Coen reviewed the information reported to him, consisting of (1) the December 1, 2010 e-mails from Monas and Schultz, (2) Monas's December 2, 2010 Termination/Suspension Report, (2) the written statements of Plaintiff's co-workers (Dubin, Messer, Brown, and King), (3) the documents relating to Schultz's attempts to verify Plaintiff's past FMLA use and the doctor's instructed refusal to provide responsive information, (4) Monas's December 9, 2010 e-mail report of the interview with Plaintiff, and (5) Plaintiff's own written statement. Coen's perception after reviewing that information was that the e-mail reports coupled with the statements of Plaintiff's co-workers—particularly those of Dubin and Messer—suggested FMLA abuse by Plaintiff. Coen also felt that it more than mere coincidence that the father's doctor had been instructed to stop providing information to Nestlé immediately after Plaintiff learned that Nestlé had suspicions about his FMLA use. The fact that the doctor's office had been instructed to stop providing information to Nestlé suggested an attempt by

Plaintiff, in Coen's mind, to prevent Nestlé from obtaining further information indicating past FMLA misuse. Additionally, Coen believed that Plaintiff's narrative seemed inconsistent in several aspects with the behavior of an employee who understood that he could take FMLA leave any time he wanted in connection with his father and had done so repeatedly prior to December. Coen also considered Plaintiff's prior final warning for suspected dishonesty in the face of a safety violation.

Finally, Coen considered Plaintiff's complaints that Monas had a personal vendetta against him. However, Coen ultimately discounted Plaintiff's claim because (1) he believed Monas to be a "by-the-book" supervisor; (2) Mifflin, who was present at Plaintiff's interview and copied on Monas's December 9 e-mail, did not voice a differing view of the situation; and (3) if Monas had fabricated events as a means of persecuting Plaintiff, the other suspicious events and information provided by others would have made little sense.

After considering the information provided to him, Coen concluded that Plaintiff had used the FMLA to obtain time off from work for non-FMLA purposes, a terminable offense under Nestlé's policies. Coen made a preliminary decision to terminate Plaintiff's employment. Prior to making a final decision, Coen called Plaintiff to ask a final question about Plaintiff's return from the country music festival. Coen recalls that during the conversation, Plaintiff conceded driving home from the country music festival at times he was scheduled to be working but had pre-arranged, on FMLA grounds, not to be at work. Plaintiff denies that he conceded this fact to Coen. Coen also contacted legal counsel to discuss the situation, as was his past practice for suspected FMLA abuse and his routine approach to termination decisions. Coen formally terminated Plaintiff's employment on December 16, 2010, and sent Plaintiff a letter notifying him that Nestlé had terminated his employment for misuse of FMLA leave.

## II. Legal Standard on Cross Motions for Summary Judgment

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross motions for summary judgment, the Court construes all facts and inferences "in favor of the party against whom the motion under consideration is made." *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006) (quoting *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 536 (7th Cir. 2005)); see also *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 888 (7th Cir. 2011); *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir.2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

## III. Analysis

Plaintiff's complaint alleges a single cause of action for "violation of the Family and Medical Leave Act."[3] Defendant contends that the information supplied to Coen prior to the decision to terminate Plaintiff supplied basis for him to honestly suspect Plaintiff's misuse of the FMLA. Plaintiff contends that the circumstances were not suspicious, that he followed protocol for requesting FMLA time, and that Monas had a personal vendetta against him, and that, at a minimum, factual disputes exist which should preclude summary judgment.

### A. The Family and Medical Leave Act

The Family and Medical Leave Act allows an "eligible employee" to take a total of twelve weeks of leave per year "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). Under the Act, leave to care for a sick loved one "may be taken intermittently or on a reduced leave schedule when medically necessary" and the employer may not reduce "the total amount of leave to which the employee is entitled * * * beyond the amount of the leave actually taken." 29 U.S.C. § 2612(b)(1). The employee returning from leave is entitled to return to the same position of employment or an equivalent. 29 U.S.C. § 2614. Further, the Act makes it unlawful for an employer to "interfere with, restrain, or deny" an employee's attempt to exercise her FMLA rights or to discriminate against an employee who exercises her rights. 29 U.S.C. §§ 2615(a)(1)-(2). The Act's entitlements and prohibitions are accompanied by a statutory stick: an employer who violates the FMLA can be sued for lost compensation and

[3] It is not clear from the complaint whether Plaintiff advances an interference or retaliation theory. However, in his motion for partial summary judgment, Plaintiff claims that he has an "interference" claim as well as "retaliation/discrimination claims pending" and that he is only moving for summary judgment on his interference claim. Defendant has moved for summary judgment on the sole count in Plaintiff's complaint, and, as set forth below, the analysis leads to the same result in these circumstances whether Plaintiff styles his claim as one for interference, retaliation, or discrimination.

statutorily calculated liquidated damages, and also may be subject to "appropriate" equitable relief. 29 U.S.C. § 2617.

"To prevail on an FMLA-interference claim, an employee must demonstrate that: (1) he was eligible for FMLA protection; (2) his employer was covered by the FMLA; (3) he was entitled to FMLA leave; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied her benefits to which she was entitled." *Brown v. Auto. Components Holdings, LLC,* 622 F.3d 685, 689 (7th Cir. 2010); see also *Ames v. Home Depot U.S.A., Inc.,* 629 F.3d 665, 669 (7th Cir. 2011); *Danek v. County of Cook*, 2011 WL 5979880, at *4 (N.D. Ill. 2011). Here, the primary issue is whether Defendant interfered with Plaintiff's FMLA rights when it suspended and eventually terminated Plaintiff's employment following a leave request. Defendant's contention is that Plaintiff was not taking his leave "for the intended purpose of the leave." *Vail v. Raybestos Prods. Co.*, 533 F.3d 904, 909 (7th Cir. 2008).

The Seventh Circuit repeatedly has stated that an employer does not violate the FMLA by terminating an employee if the employer honestly believes that the employee has used FMLA leave for reasons other than its intended purpose: "an employer can defeat an interference claim by showing, among other things, that the employee did not take leave 'for the intended purpose,'" (see *id.* (citation omitted)), and "an employer's honest suspicion that the employee was not using his medical leave for its intended purpose is enough to defeat the employee's substantive rights FMLA claim." *Crouch v. Whirlpool Corp.,* 447 F.3d 984, 986 (7th Cir. 2006); see also *Scruggs v. Carrier Corp.*, 688 F.3d 821, 822 (7th Cir. 2012); *Vail*, 533 F.3d at 909; *Kariotis v. Navistar Int'l Transp. Corp.*, 131 F.3d 672, 681 (7th Cir. 1997). Such honest suspicion forecloses any FMLA claim, whether the employee brings the claim under an interference or retaliation theory. See *Scruggs*, 688 F.3d at 827 (rejecting a retaliation claim

where the employer terminated the employee based on suspicions of misuse because "[i]f were to hold otherwise, virtually any FMLA plaintiff fired for misusing his leave would be able to state a claim for retaliation"); *Vail*, 533 F.3d at 909 (an employer's honest suspicion of FMLA abuse is sufficient to defeat an interference claim); *Crouch*, 447 F.3d at 986. Even if an employee claims that the investigation into the alleged misconduct was deficient, as long as the employer had an honest suspicion that misuse had occurred—even if that basis is ultimately incorrect and even if the employer "could have conducted a more thorough investigation"—the employer does not violate the FMLA. See *Scruggs*, 688 F.3d at 826 (noting that "although [the employer] could have conducted a more thorough investigation * * * it was not required to do so"); *Kariotis*, 131 F.3d at 677 (affirming summary judgment even where the employer's investigation "hardly looks world-class"). The relevant question is whether the employer had an "honest suspicion"—even if incorrect—that the employee was misusing FMLA. See *Scruggs*, 688 F.3d at 824 (affirming summary judgment even where there was a dispute as to whether the employee actually used leave for an approved purpose); *Kariotis*, 131 F.3d at 677 (noting that an employer need not conclusively demonstrate FMLA abuse because an honest suspicion will do).

Prior to making the final decision to terminate Plaintiff,[4] Human Resources Manager Coen had reviewed the following information: (1) Monas's reports of the events of December 1, 2010, which stated that Plaintiff claimed a need for FMLA only after Monas denied his floating holiday request; (2) the fact that Plaintiff's father's doctor appointment was scheduled only after Nestlé told Plaintiff that it had learned that no appointment existed for December 2nd, suspended

[4] It is not entirely clear whether Plaintiff contends that his initial suspension pending investigation was actually a termination. To the extent that he is claiming that his suspension on December 1, 2010, was in fact a termination, the record does not support Plaintiff's theory. Once Defendant learned that Plaintiff's father did not have a doctor's appointment initially scheduled for December 2, there was nothing inappropriate with Defendant's decision to investigate Plaintiff's use of FMLA time. Moreover, the record makes clear that Coen directed an investigation into the circumstances surrounding the December 1 leave request and did not make a final termination decision until several days later.

him, and told him it intended to investigate suspicions of FMLA abuse; (3) the fact that after Nestlé informed Plaintiff of its intent to investigate, the doctor's office was instructed not to provide information to Nestlé; (4) statements from two employees (Dubin and Messer) suggesting that Plaintiff had taken FMLA time to play golf, have breakfast, or spend time with his girlfriend, including the specific report from Messer that Plaintiff said to him, "Screw it. I'll use FMLA and hit breakfast with you"; (5) the report of Monas's and Mifflin's interview with Plaintiff on December 9th during which, as reported by Monas, Plaintiff acknowledged driving home from a country music festival on a day he had prearranged to take FMLA leave; (6) Plaintiff's history of attendance problems and previous warning for safety violation coupled with suspected dishonesty; (7) Plaintiff's statements; and (8) statements from two employees (Brown and King) who did not believe that Plaintiff misused FMLA time.

The fact that Coen had all of this information at the time he made his decision—and considered all of it together before making his decision—is what is material to the Court's decision. Plaintiff primarily attempts to cast doubt on the truth of the information that was reported to Coen and claim that disputed issues of material fact exist. But the issue is not whether Plaintiff in fact misused the FMLA; the ultimate inquiry is whether the decision-maker had an honest belief that the employee abused FMLA leave. As the Seventh Circuit and other courts have made clear, as long as Coen had a basis to rely upon in suspecting that misuse had occurred, even if the facts forming that basis ultimately prove incorrect, Coen still had a legitimate suspicion of FMLA abuse, precluding Plaintiff from proving a valid FMLA claim. *Scruggs*, 688 F.3d at 824; *Kariotis*, 131 F.3d at 677; *Davis v. Subaru of Ind. Auto., Inc.*, 2008 WL 3289164, at *5-6 (N.D. Ind. Aug. 8, 2008) (granting summary judgment where the decision-

maker did not himself investigate the suspected misuse, but rather relied upon the reported information).

Plaintiff also maintains that Coen did not have an honest suspicion of FMLA abuse because he did not credit Plaintiff's version of events, but instead credited Monas, Mifflin, Schultz, Dubin, and Messer's statements (as well as the information from the doctor's office and Plaintiff's prior history of absenteeism and suspected dishonesty). However, Coen's investigative process squares with the case law and his ultimate conclusion, although not infallible, was backed by substantial evidence. Perhaps most telling, Plaintiff has not pointed to any evidence in the record, beyond his suspicions, that the process was discriminatory (rather than investigative) or that anyone at Nestlé actually had it out for him. In fact, the record does not contain a single instance of animus by Plaintiff's co-workers in the time preceding the events of December 1-2, 2010. The Court is not discounting Plaintiff's belief, but, in light of the record before the Court, his belief that Nestlé did not have legitimate basis for terminating him does not allow him to escape Seventh Circuit precedent. See *Scruggs*, 688 F.3d at 827; *Vail*, 533 F.3d at 909; *Crouch*, 447 F.3d at 986 (stating that "an employer's honest suspicion that the employee was not using his medical leave for its intended purpose is enough to defeat the employee's substantive rights FMLA claim"). Instead, the record supports the conclusion that Coen, relying upon several pieces of information supplied by others (some of it not even disputed), had an honest suspicion that Plaintiff was misusing FMLA leave.[5] *Scruggs*, 688 F.3d at 826; *Kariotis*,

---

[5] To the extent that Plaintiff has argued that Coen "lied" about his recollection of the conversation he allegedly had with Plaintiff on December 9, 2010, regarding the Country Thunder concert, Plaintiff's deposition testimony does not support his assertion. Defendant has put forth evidence that although Plaintiff does not recall having the conversation, he conceded in his deposition that it might have occurred and Coen might have asked him when he returned from the concert. See Hamm Dep. at 107:2-11, 108:11-109:1. In responding to Defendant's fact statement that asserts that Plaintiff conceded to Coen that he was driving home from the country music festival at a time that he was scheduled to be working but had prearranged (on FMLA grounds) to be absent, Plaintiff disputes the fact and refers the Court to a

131 F.3d at 677; *Jenkins v. Ford Motor Co.*, 2008 WL 5102126, at *4-5 (S.D. Ind. Dec. 1, 2008) (granting summary judgment where the decision-maker relied upon the reported information).

Coen's conclusion that Plaintiff abused his FMLA leave and decision to terminate his employment on that basis falls squarely within several Seventh Circuit decisions (see, *e.g.*, *Kariotis*, *Crouch*, *Vail*, and *Scruggs*). Based on the facts set forth above, the Court concludes that Coen's decision to credit the information that he received from multiple individuals over Plaintiff's self-interested denials and the statements of Brown and King was not discriminatory or retaliatory and did not unlawfully interfere with Plaintiff's rights under the FMLA. Rather, Coen's assessment of the situation appears sound, and certainly defensible, against the backdrop of suspicious occurrences—in particular, the timing of the events in question, the doctor's office suddenly being instructed to stop providing information to Nestlé shortly after Plaintiff learned that his FMLA leave had come under suspicion, written statements from Plaintiff's co-workers attesting to FMLA abuse, and Plaintiff's past attendance issues—all of which was known by Coen when he made the decision to terminate Plaintiff.[6]

---

portion of his deposition where he allegedly told Monas and Mifflin that he returned on Sunday (not Monday). Plaintiff did not submit any evidence regarding a conversation with Coen and thus the only information before the Court is that Plaintiff did not recall the conversation but it might have occurred. As previously indicated, unsupported denials are insufficient to rebut a movant's factual allegations. See *McGuire v. UPS*, 152 F.3d 673, 675 (7th Cir. 1998) ("An answer that does not deny the allegations in the numbered paragraphs *with citations to supporting evidence in the record* constitutes an admission.") (internal citations omitted). Plaintiff's failure to submit evidence supporting his denial, plus all of the other evidence before Coen when he made his decision and the dearth of evidence that Coen bore any animus toward Plaintiff, supports the conclusion that Coen had an "honest suspicion" that Plaintiff was misusing FMLA leave time.

[6] To the extent that Plaintiff also asserts a retaliation claim against Defendant, this claim also fails because Plaintiff cannot demonstrate that he was denied leave to which he was entitled. See *Smith v. Hope Sch.*, 560 F.3d 694, 702 (7th Cir. 2009) ("If [plaintiff's] request for leave was invalid," then plaintiff "was not engaging in statutorily protected activity and thus could not have been fired for asserting her rights under the FMLA."); *Durkin v. City of Chicago*, 341 F.3d 606, 614–15 (7th Cir. 2003) ("It is axiomatic that a plaintiff engage in statutorily protected activity before an employer can retaliate against her for engaging in statutorily protected activity."). Nestlé ultimately concluded that Plaintiff was not entitled to FMLA leave for the only incident referenced in Plaintiff's complaint and that

## IV. Conclusion

For these reasons, the Court grants Defendant's motion for summary judgment [20] and denies Plaintiff's cross motion for summary judgment [23]. Judgment will be entered in favor of Defendant Nestlé USA, Inc., and against Plaintiff Steve Hamm.

Dated: August 15, 2013

Robert M. Dow, Jr.
United States District Judge

---

Plaintiff had in fact abused Nestlé's FMLA leave policy. Because the Court concludes that Nestlé had an honest suspicion that Plaintiff abused the FMLA leave policy, Nestlé did not retaliate against Plaintiff in suspending him or eventually terminating his employment. See *Scruggs*, 688 F.3d at 827 (rejecting a retaliation claim where the employer terminated the employee based on suspicions of misuse because "[i]f were to hold otherwise, virtually any FMLA plaintiff fired for misusing his leave would be able to state a claim for retaliation").